UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| LYLE HOLTON,<br><br>             Plaintiff,<br><br>    vs.<br><br>LT. HOUSTON, Lt. 1 at Pennington County Jail, in his or her individual and official capacity; S.C.O. DIRO, S.C.O. at Pennington County Jail, in his or her individual and official capacity; CPT. MUNSCH, Captain at Pennington County Jail, in his or her individual and official capacity; COMMANDER YANTIS, Commander at Pennington County Jail, in his or her individual and official capacity; KEV THOM, Elected Sheriff for Pennington County, in his individual and official capacity,<br><br>             Defendants. | 5:22-CV-05059-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Lyle Holton, an inmate at the Pennington County Jail at the time that this lawsuit was filed,[1] filed a pro se civil rights lawsuit under 28 U.S.C. § 1983. Docket 1.[2] Holton moves for leave to proceed in forma pauperis

---

[1] Holton does not provide facts regarding the reason he was detained at the Pennington County Jail, nor does he provide his expected release date. *See* Docket 1. He is currently incarcerated at the Winner City Jail. Docket 7. The court will treat him as a pretrial detainee because he was incarcerated at a county jail when he filed the present action. *See* Docket 1 at 1.

[2] Holton also marked the *Bivens* action box in his complaint. Docket 1 at 1. *Bivens* actions are reserved for when a federal official has violated a plaintiff's Constitutional rights. *See Bivens v. Six Unknown Named Agents of Federal*

and has included a prisoner trust account report. Dockets 2, 3. Holton has also filed a motion for appointment of counsel and a motion for a preliminary injunction. Dockets 4, 6.

## I.     Motion for Leave to Proceed in Forma Pauperis

Holton reports average monthly deposits of $0.00 and an average monthly balance of $0.00. Docket 3 at 1. Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). "[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Holton's prisoner trust account, the court grants Holton leave to proceed in forma pauperis and waives the initial partial

---

*Bureau of Narcotics*, 403 U.S. 388 (1971). Because defendants are Pennington County employees and not federal officials, Holton's *Bivens* action is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Holton must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Holton's institution. Holton remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997).

## I.     1915A Screening

### A.     Factual Background

The facts alleged in Holton's complaint are: that on or about March 23, 2022, Holton was removed from his commonfare/Kosher diet at the Pennington County Jail for "abusing diet." Docket 1 at 7. Holton, a Muslim inmate, claims that he reapplied for this diet thirteen times between March and June of 2022 and was denied each time. *See id.* He claims that he previously filed two

grievances regarding this issue and that he filed a third grievance at the time that he wrote this complaint. *Id.* He also claims that, to his knowledge, only Muslims at the Pennington County Jail have been completely denied the commonfare/Kosher religious diet. *Id.*

Holton alleges that he has had to pick and choose food that did not violate his religious dietary laws and that this has caused him to lose a considerable amount of weight. *Id.* He alleges that he has refused unfit food since June 26, 2022, and he has been on a "religious hunger strike" since then. *Id.* at 7, 10. He also alleges that he is six feet tall and now weighs only 144 pounds. *Id.* at 7. Holton attaches affidavits from five fellow inmates, who all state that Holton is a devout Muslim whose health has suffered because of his dietary restrictions. Docket 1-1 at 1-5.

Holton claims that all defendants have violated his First Amendment and Fourteenth Amendment rights. Docket 1 at 3-4. He claims that he has "suffered severe mental agitation" and "actual physical injury" in that he has lost weight. *Id.* at 6. He asks this court for a preliminary injunction ordering the Pennington County Jail to place him back on his commonfare/Kosher diet. *Id.* at 10. He also asks for $50,000 "for each physical [and] mental harm" and $30,000 in punitive damages. *Id.*

## B. Legal Background

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663-64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553-61)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim

upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Official Capacity Claims for Money Damages

Holton brings claims against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages. Docket 1 at 3-4, 10. Houston, Diro, Munsch, Yantis, and Thom were employees of the Pennington County Jail and Pennington County Sheriff's Office at the time of the incidents in question. *Id.* at 3-4. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Holton's official capacity claims against Houston, Diro, Munsch, Yantis, and Thom are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.*; *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1997) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Holton alleges that "only Muslims have been completely denied commonfare/Kosher religious diet." Docket 1 at 7. Although Holton does not specifically plead the existence of an unconstitutional policy or custom, he alleges that his rights were violated by "conduct [that] resulted from an unconstitutional policy or custom" of denying religious diets to Muslim inmates. *See Crumpley-Patterson*, 388 F.3d at 591 (citing *Doe*, 340 F.3d at

7

614). Thus, this court must consider whether Holton's rights were violated by this allegedly unconstitutional policy or custom.

### a.   First Amendment Claim

Holton alleges that his First Amendment rights have been violated by the Pennington County Jail's policy or custom of denying Muslims a religious diet. *See* Docket 1 at 6-7. Construing his complaint liberally, Holton brings a First Amendment free exercise claim against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages. *See id.* at 3-4, 6-7.

In order to state a First Amendment free exercise claim, Holton must allege facts showing that prison officials have substantially burdened the free exercise of his religion. *Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening the free exercise of religion means that the regulation

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a [person's] religion.

*Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 988 (8th Cir. 2004) (cleaned up). Holton alleges that his ability to follow his religious dietary practices has been significantly inhibited by the Pennington County Jail's policy or custom of denying Muslims a religious diet. *See* Docket 1 at 7. Thus, Holton's First Amendment free exercise claim against Houston, Diro, Munsch, Yantis, and

Thom in their official capacities for money damages survives § 1915A screening.

### b.      Fourteenth Amendment Claim

Holton alleges that his Fourteenth Amendment rights have been violated by the Pennington County Jail's policy or custom of denying Muslims a religious diet. *See* Docket 1 at 7-8. Construing his complaint liberally, Holton brings a Fourteenth Amendment equal protection claim against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages. *See id.* at 3-4, 7-8.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). The Eighth Circuit Court of Appeals has explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel*, 515 F.3d at 815 (citations and internal quotation omitted). "Religion is a suspect classification." *Id.* at 816 (citing *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Here, Holton alleges that he has been treated differently than similarly situated inmates of different religions and that this different treatment has been caused by a policy or custom of the Pennington County Jail. *See* Docket 1 at 7. Specifically, he alleges that Muslim inmates are not allowed to follow a

religious diet, but inmates of other religions are still provided religious diets. *Id.* Thus, Holton's Fourteenth Amendment equal protection claim against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages survives § 1915A screening.

### 2.    Official Capacity Claims for Injunctive Relief

Holton brings claims against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for injunctive relief. *Id.* at 3-4, 10. In a letter dated August 6, 2022, Holton informed this court that he has been transferred from the Pennington County Jail to the Winner City Jail. Docket 7 at 1. The Eighth Circuit has explained that an "inmate's claims for injunctive and declaratory relief to improve prison conditions are moot when he is transferred to another facility and is no longer subject to those conditions[.]" *Davis v. Missouri*, 389 F. App'x 579, 579 (8th Cir. 2010) (per curiam) (citing *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999)). Thus, Holton's claims for injunctive relief to improve conditions at the Pennington County Jail are moot. Holton's claims against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Further, Holton's motion for a preliminary injunction asking this court to order Pennington County Jail to provide Holton his religious diet (Docket 6) is denied as moot.

### 3.    Individual Capacity Claims

Holton brings claims against Houston, Diro, Munsch, Yantis, and Thom in their individual capacities. Docket 1 at 3-4. "Because vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Holton's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

Here, Holton makes no allegations regarding each individual defendant's direct participation or failure to train or supervise. *See* Docket 1 at 7. Although he alleges that he has been denied his religious diet at the Pennington County Jail, he makes no reference to any jail official who he claims is responsible for denying him his diet, implementing the allegedly unconstitutional policy or custom of denying religious diets to Muslim inmates, or failing to train or supervise an offending actor. *See id.* Thus, his claims against Houston, Diro, Munsch, Yantis, and Thom in their individual capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.    Motion for Appointment of Counsel

Holton moves for appointment of counsel. Docket 4. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Under 28 U.S.C.

§ 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." When determining whether to appoint counsel to a pro se litigant, the Eighth Circuit considers "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted). Here, Holton's claims do not appear to be factually or legally complex. Because this court believes that Holton can adequately present his claims at this time, his motion for appointment of counsel (Docket 4) is denied.

Thus, it is ORDERED:

1.  That Holton's motion for leave to proceed in forma pauperis (Docket 2) is granted.

2.  That the institution having custody of Holton is directed that whenever the amount in Holton's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Holton's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

3.  That Holton's First Amendment free exercise claims against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages survive § 1915A screening.

4.     That Holton's Fourteenth Amendment equal protection claims against Houston, Diro, Munsch, Yantis, and Thom in their official capacities for money damages survive § 1915A screening.

5.     That Holton's remaining claims against Houston, Diro, Munsch, Yantis, and Thom in their individual and official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.     That Holton's motion for appointment of counsel (Docket 4) is denied.

7.     That Holton's motion for a preliminary injunction (Docket 6) is denied as moot.

8.     That the Clerk of Court shall send blank summons forms and Marshal Service Forms (Form USM-285) to Holton so that he may cause the complaint to be served upon defendants Houston, Diro, Munsch, Yantis, and Thom.

9.     That Holton shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Houston, Diro, Munsch, Yantis, and Thom. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed.

10.    The United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Docket 1) and

this order, upon defendants Houston, Diro, Munsch, Yantis, and Thom.

11.     Defendants Houston, Diro, Munsch, Yantis, and Thom will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

12.     Holton will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated October 31, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE