UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| LYLE HOLTON,<br><br>     Plaintiff,<br><br>  vs.<br><br>LT. HOUSTON, Lt. 1 at Pennington County Jail, in his or her individual and official capacity; S.C.O. DIRO, S.C.O. at Pennington County Jail, in his or her individual and official capacity; CPT. MUNSCH, Captain at Pennington County Jail, in his or her official capacity; COMMANDER YANTIS, Commander at Pennington County Jail, in his or her individual and official capacity; BRIAN MUELLER, Elected Sheriff for Pennington County, in his official capacity,<br><br>     Defendants. | 5:22-CV-05059-KES<br><br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Lyle Holton, an inmate at the Pennington County Jail, filed a pro se lawsuit under 42 U.S.C. § 1983. Dockets 1, 14. Holton alleges that defendants, employees of the Pennington County Jail and the Pennington County Sheriff's Office, violated his rights under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Equal Protection Clause, the Religious Freedom Restoration Act (RFRA), and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying him religiously appropriate meals during his incarceration. Docket 14 at 6-10. Defendants now move for

summary judgment. Docket 25. For the reasons provided below, the court grants defendants' motion for summary judgment.

## PROCEDURAL BACKGROUND

Holton filed his initial complaint on July 5, 2022. Docket 1. In his initial complaint, Holton sued Lt. Houston, S.C.O. Diro, Cpt. Munsch, Commander Yantis, and former Pennington County Sheriff Thom, in their individual and official capacities seeking money damages and injunctive relief. *Id.* at 3-4. The court screened Holton's complaint and found that Holton's official capacity claims for money damages against the defendants survived screening. Docket 8 at 6-10. The court dismissed without prejudice Holton's official capacity claims for injunctive relief because they were moot and his individual capacity claims for money damages because Holton failed to allege each individual defendant's direct participation. *Id.* at 10-11.

Holton filed an amended complaint on February 2, 2023. Docket 14. In his amended complaint, Holton sued the same five Pennington County officials in their individual and official capacities for violations under the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. *Id.* at 3-4, 6-8. Holton asserted two additional claims under RFRA and RLUIPA. *Id.* at 9-10. In his amended complaint, Holton makes allegations as to each individual defendant's direct participation or failure to supervise. *Id.* at 6-10. The amended complaint seeks monetary and punitive damages, but not injunctive relief. *Id.* at 11. Holton also includes eight letters from fellow inmates describing his devotion as a Muslim. Docket 14-1 at 1-8.

2

On August 17, 2023, the court issued a Rule 25(d) Substitution replacing former Pennington County Sheriff Thom with current Pennington County Sheriff, Brian Mueller, as the defendant for the remaining official capacity claims. Docket 21 at 2.

## FACTUAL BACKGROUND

Because defendants move for summary judgment, the court recites the facts in the light most favorable to Holton. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But Holton did not respond to defendants' statement of undisputed materials facts. Docket 26. Local Civil Rule 56.1(D) provides, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1(D). The court deems all the statements in the defendants' statement of undisputed material facts to be admitted. *See Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (providing that a plaintiff's pro se status does not excuse him from responding to a motion for summary judgment "with specific factual support for his claims to avoid summary judgment") (citing Fed. R. Civ. P. 56(e)). Thus, viewing the record in the light most favorable to Holton, the undisputed material facts are:

Holton was a pretrial detainee at the Pennington County Jail from approximately May 17, 2019, through February 11, 2020, and September 30, 2020, through July 29, 2022. Docket 26 ¶ 1. On January 9, 2020, Holton submitted a Request for Religious Accommodations Form requesting an

accommodation for "[K]osher [M]eal Dairy separate no pork" because of "faith through the holy prophet M[uhammad]." *Id.* ¶ 21. Holton cited the Qur'an and Old Testament as sources supporting the accommodation request. *Id.* Holton's request was approved, and he was placed on the kosher/common fare diet on January 9, 2020. *Id.* ¶ 22.

On February 11, 2020, Holton was transferred to another facility. *Id.* ¶ 23. Holton returned to the Pennington County Jail on September 30, 2020, and was started on the kosher/common fare diet upon intake. *Id.* ¶ 24. The Pennington County Jail's policy regarding religious diets provides:

> B. Inmates that are provided with a religious diet cannot:
>
>> 1. Refuse the meal unless ill;
>>
>> 2. Give away or trade food;
>>
>> 3. Take a non-diet tray;
>>
>> 4. Intentionally waste or destroy food; and/or,
>>
>> 5. Order commissary items that are inconsistent with the religious diet provided.
>
> C. Any inmate who fails to follow the conditions of the religious diet is subject to the following disciplinary action:
>
>> 1. First Violation: Written warning of the violation and possible removal from the religious diet.
>>
>> 2. Second Violation: The religious diet will be cancelled.

Docket 28-2 at 1.

The Pennington County Jail policy on religious diets is meant to "provide inmates therapeutic and religious diets while still providing a nutritionally balanced diet . . . consistent with maintaining the safety, security, and order of the jail." Docket 28 ¶ 8. The policy "promotes inmate accountability, controls

4

costs, and reduces waste of financial, kitchen, and food resources." *Id.* ¶ 9. The policy also ensures: (1) "compliance with rules and maintaining discipline, safety, and order within the jail"; (2) "only those with sincere religious beliefs receive the more expensive and time-consuming kosher/common fare meals"; and (3) inmates are restricted "from sharing food, trading food, or saving food to reduce or eliminate prison disputes, theft, fighting, extortion, and gambling." *Id.* ¶¶ 12-14.

It takes the Pennington County Jail longer to prepare and serve the kosher meals than the standard meals. Docket 28 ¶ 11. The kosher meals also cost $2.30 per meal and standard meals cost $1.52 per meal. *Id.* ¶ 10. Inmates can purchase non-pork and kosher food from the commissary. *Id.* ¶ 15. On February 2, 2022, the Pennington County Jail stopped serving pork for any inmate meal. *Id.* ¶ 18.

On August 20, 2021, Holton gave food from his kosher/common fare meal to another inmate. Docket 26 ¶ 35. Holton was placed on lockdown and warned that future abuse of the religious accommodation would result in suspension of his receipt of the kosher diet. Docket 28-4. On February 24, 2022, Holton was disciplined for saving food from his kosher meal. Docket 26 ¶ 37. As a result, Holton received a written warning explaining that continued abuse of his kosher diet may result in removal of his religious accommodation. *Id.*; Docket 28-6 at 1. On March 21, 2022, Holton took non-kosher food from another inmate's tray. Docket 26 ¶ 38. Consequently, on March 22, 2022,

Holton was removed from his kosher/common fare diet for abusing the diet policies set out by the Pennington County Jail. Docket 26 ¶ 39; Docket 28-8.

Holton claims that he re-applied for the diet thirteen times between March and June 2022 and was denied each time by either Diro or Houston. Docket 14 at 7. Holton alleges that he filed three appeals between April and June 2022, and was denied each time by either Houston, Munsch, or Yantis. *Id.* Holton claims that Sheriff Thom "failed to properly train or suppervise [sic] his employes [sic]." *Id.* Holton also alleges that "[a]s far as I know only Muslims have completely been denied the Commonfare/Kosher religious diet." *Id.* at 8.

Holton alleges that because he was removed from the kosher diet, he had to choose food that was least likely to violate his religious dietary laws and lost a "considerable amount of weight." *Id.* at 7. Holton claims that he was down to 144 pounds and is six feet tall. *Id.* Holton also alleges that he "suffered severe mental anguish as well as [e]motional distress and actual physical injury due to weight loss." *Id.* at 6, 8-10. Holton alleges that he requested clergy visits and talked with both Medical and Mental Health regarding the situation. *Id.* at 7.

On July 1, 2022, Holton was placed back on the kosher/common fare diet. Docket 26 ¶ 40. Holton was transferred to another facility on July 29, 2022. *Id.* ¶ 41. On November 28, 2023, Holton was transferred back to the Pennington County Jail and is receiving the kosher/common fare diet. *Id.* ¶ 42.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

6

any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting
evidence that there is no dispute of material fact or that the nonmoving party
has not presented evidence to support an element of its case on which it bears
the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23
(1986). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact;
(2) the disputed fact is material to the outcome of the case; and (3) the dispute
is genuine, that is, a reasonable jury could return a verdict for either party."
*Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in
original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399,
401 (8th Cir. 1995)).

    To avoid summary judgment, "[t]he nonmoving party may not 'rest on
mere allegations or denials, but must demonstrate on the record the existence
of specific facts which create a genuine issue for trial.' " *Mosely v. City of
Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. of
Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "A plaintiff's verified complaint is
the equivalent of an affidavit for purposes of summary judgment, . . . and a
complaint signed and dated as true under penalty of perjury satisfies the
requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d
992, 994-95 (8th Cir. 2001) (citations omitted). If the allegations in the verified
complaint consist of nothing more than conclusory allegations, however, they
are insufficient to overcome a summary judgment motion. *See Roberson v.
Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999). Holton's amended complaint is a

7

verified complaint and will be used as evidence in ruling on the defendants' motion. *See* Docket 14 at 11.

## DISCUSSION

In his amended complaint, Holton seeks monetary damages "for each physical and mental harm" and punitive damages "to punish those involved in treating me this way." *Id.* Holton brings each of his claims—Free Exercise, Equal Protection, RFRA,[1] and RLUIPA—against all defendants. *See id.* at 6-10. He is suing defendants Houston, Diro, Munsch, and Yantis in their individual and official capacities and suing defendant Mueller in his official capacity. *See id.* at 3-4; Docket 21 at 2.

## I.  Holton's Official Capacity Claims

Holton brings claims for money damages against all defendants in their official capacities for violations of RLUIPA, the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Docket 14 at 3-4, 6-10. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007)).

---

[1] The Supreme Court held that RFRA is unconstitutional as applied to the states and its localities in *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997) (holding that Congress exceeded its authority by using its § 5 power under the Fourteenth Amendment to enact RFRA). Thus, defendants' motion for summary judgment is granted on Holton's RFRA claims for money damages against all defendants in their official and individual capacities.

Thus, the official capacity claims against defendants are suits against Pennington County.

To establish a § 1983 claim against Pennington County, Holton must show that an official or unofficial policy was the "moving force" behind the alleged constitutional violation. *Marti v. City of Maplewood, Mo.*, 57 F.3d 680, 684 (8th Cir. 1995) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The court first addresses Holton's claims under RLUIPA and the First Amendment.

### A.     RLUIPA and First Amendment Free Exercise Claims

Defendants argue that they have not substantially burdened, under RLUIPA and the First Amendment, Holton's religious exercise by removing Holton from the kosher/common fare diet because "the standard meals do not contain pork and thus comply with his request not to eat pork for religious reasons." Docket 27 at 11.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §§ 2000cc-1(a). The statute defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

9

Under RLUIPA, a plaintiff must show "that their sincere religious beliefs are substantially burdened by the challenged policies." *Holt v. Payne*, 85 F.4th 873, 878 (8th Cir. 2023) (citations omitted). "When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause . . . and RLUIPA." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).[2] To show that a regulation substantially burdens the plaintiff's free exercise of religion means that the regulation:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Id.* (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)). If a plaintiff satisfies this burden, the burden then shifts to the government to show that its policy is "the least restrictive means of furthering a compelling governmental interest." *Ramirez v. Collier*, 595 U.S. 411, 425 (2022) (citing 42 U.S.C. §§ 2000cc-1(a)).

Under the Free Exercise Clause and RLUIPA, Holton must establish that the Pennington County Jail's policy regarding religious diets has placed a substantial burden on his ability to practice his religion. *See Weir v. Nix*, 114 F.3d 817, 820 (1997) (requiring a plaintiff alleging that a government policy violates their right to free exercise must establish that the policy substantially

---

[2] For purposes of their summary judgment motion, defendants do not challenge the sincerity of Holton's religious beliefs. Docket 27 at 7.

burdens their "sincerely held religious belief"); 42 U.S.C. §§ 2000cc-1(a) (prohibiting the government from placing a substantial burden on an institutionalized person's religious beliefs under RLUIPA). "Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from . . . RLUIPA." *Patel*, 515 F.3d at 813 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). Because the court concludes that Holton has failed to establish that the jail's policy substantially burdened his free exercise rights, the court need not reach the issue of whether Holton's claims satisfy the respective burdens under the Free Exercise Clause and RLUIPA.

Here, Holton has not shown that his religious dietary practices have been significantly burdened by the Pennington County Jail's policy. The record shows that Holton was denied the common fare/kosher diet for a period of roughly three months. *See* Docket 14 at 7; Docket 26 ¶¶ 39-40. During this period, Holton alleges that he had to "pick and chose [sic] foods least likely to violate his religious dietary laws." Docket 14 at 7. Holton does not allege, however, that the Pennington County Jail's option of non-pork standard meals and the availability of non-pork and kosher food options offered by the jail's commissary were not viable alternatives that allowed Holton to follow the restrictions of his religious diet. *See* Docket 26 ¶¶ 33, 36.

In *Patel v. U.S. Bureau of Prisons*, the Eighth Circuit held that the Bureau of Prisons did not substantially burden—under RLUIPA and the

First Amendment—a Muslim inmate's religious exercise where it denied the inmate's request for halal meals. 515 F.3d at 813-15. The court noted that Patel had alternative meal options because he could purchase halal entrées from the commissary or could eat the prison's offered vegetarian dishes, despite cross-contamination concerns, to satisfy his religious dietary requirements. *Id.* at 814-15. The court reasoned that because Patel failed to introduce evidence of his indigency, "[r]equiring [Patel] to purchase commissary meals does not significantly inhibit, meaningfully curtail, or deny Patel a reasonable opportunity to practice his religion." *Id.* at 814. Thus, because Patel failed to exhaust "alternative means of accommodating his religious dietary needs," the court concluded that denying Patel a halal meal did not constitute a substantial burden on his religious exercise. *Id.* at 815.

Some district courts have found that the denial of a religious diet constitutes a substantial burden on an inmate's religious practice where the specific dietary meal is not offered at all. *See, e.g.*, *Van Wyhe v. Reisch*, 536 F. Supp. 2d 1110, 1120-21, 1125 (D.S.D. Feb. 13, 2008) ("*Van Wyhe I*") (holding that removing a Jewish inmate from the kosher diet "clearly infringe[d] upon Plaintiff's religious belief" where there was "very little alternative means to exercise his right to a kosher diet"); *Toler v. Leopold*, 2008 WL 926533, at *2 (E.D. Mo. Apr. 3, 2008) (finding that the denial of kosher diet substantially burdened a Jewish inmate's free exercise rights where the inmate had "no consistent and dependable way

12

of exercising his right to maintain a Kosher diet" from the prison's commissary); *Jihad v. Fabian*, 2011 WL 1641767, at *7 (D. Minn. May 2, 2011) (holding that a substantial burden existed where the prison refused to provide a Muslim inmate with halal meals and no halal meals were offered by the prison's commissary).

Here, Holton has "alternative means of accommodating his religious dietary needs." *Patel*, 515 F.3d at 815. Holton does not allege that the non-pork standard meals offered by the Pennington County Jail, or the non-pork and kosher food offered by its commissary are inadequate to comply with his religious dietary restrictions. Before and during the period when Holton was taken off the kosher/common fare diet, the Pennington County Jail stopped serving pork in its standard meals. Docket 26 ¶¶ 36, 39. As such, Holton had the opportunity to eat the non-pork standard meals and still comply with his religious dietary request to eat "no pork." Docket 28-1. Thus, because Holton fails to allege that either of these two alternatives are inadequate, Holton's free exercise rights have not been substantially burdened by the Pennington County Jail's decision to remove him from the kosher/common fare diet.

Overall, Holton has not shown that the Pennington County Jail's religious diet policy significantly inhibited or constrained his religious conduct, meaningfully curtailed his ability to express adherence to his faith, or denied him reasonable opportunities to engage in activities fundamental to his religion. *See Patel*, 515 F.3d at 813. Holton has not

13

offered evidence to create a genuine issue of material fact sufficient for a jury to find that his ability to practice his religion has been substantially burdened. Thus, defendants are entitled to summary judgment on Holton's RLUIPA's official capacity claims for money damages.

"Where an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe v. Reisch*, 581 F.3d 639, 657-58 (8th Cir. 2009) ("*Van Wyhe II*") (citing *Patel*, 515 F.3d at 813)). Thus, for the reasons stated above, defendants are entitled to summary judgment on Holton's official capacity RLUIPA and Free Exercise claims for money damages.

### B.    Fourteenth Amendment's Equal Protection Clause

Holton alleges that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when he was denied the kosher diet by either Diro, Houston, Munsch, or Yantis. Docket 14 at 8. Specifically, he alleges that "only Muslims have completely been denied the Commonfare/Kosher religious diet." *Id.*

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy*, 372 F.3d at 984 (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). To succeed on his equal protection claim, Holton must show that (1) he is treated differently from similarly situated inmates, (2) the difference in treatment is based on either a suspect classification or a

14

fundamental right, and (3) the difference in treatment is motivated by intentional or purposeful discrimination. *See Patel*, 515 F.3d at 815-16. Religion is a suspect classification. *See Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006).

As stated above, to establish his § 1983 claim against Pennington County, Holton must show that an official or unofficial policy was the "moving force" behind the alleged constitutional violation. *Marti*, 57 F.3d at 684 (citing *Monell*, 436 U.S. at 694). In the absence of an official policy, to establish government liability premised on an unofficial custom, a plaintiff must come forward with record evidence to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016)).

Holton's equal protection claim fails because he has not set forth evidence of an unofficial custom in Pennington County of only removing Muslim inmates from the kosher/common fare diet. Holton has failed to produce evidence that shows the existence of continuing or widespread unconstitutional conduct against Muslims on the part of the defendants. Docket 14 at 8; *see Brewington*, 902 F.3d at 801-02. Holton has not presented evidence that defendants have treated him differently from similarly situated

inmates. Also, even if Holton has been treated differently from similarly situated inmates, Holton's equal protection claim fails because he has not produced sufficient evidence to raise a question of fact as to whether defendants intentionally discriminated against him. Thus, summary judgment is properly entered on Holton's equal protection claim in favor of defendants in their official capacities.

## II.    Holton's Individual Capacity Claims

Holton has also sued all defendants, except Mueller, in their individual capacities. Docket 14 at 3-4. Holton alleges that his religious diet was denied by either Diro, Houston, Munsch, or Yantis and his applications to be placed back on the kosher/common fare diet were denied by Diro and Houston. Docket 14 at 7-8. A § 1983 claim for money damages may proceed against local government officials who are sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

### A.    Munsch and Yantis Are Not Entitled to Summary Judgment on Holton's § 1983 Individual Capacity Claims Based Upon a Lack of Individual Participation.

Munsch and Yantis assert that Holton's § 1983 individual capacity claims against them cannot survive summary judgment because their denials of Holton's grievances do not state a substantive constitutional claim.[3] Docket

---

[3] Defendants also argue that "[t]o the extent that the individual capacity claim against Sheriff Thom was resurrected in the Amended Complaint," they are entitled to summary judgment because "the only allegation is a conclusory one that he 'has failed to properly train or supervise his employees.' " Docket 27 at 19 (quoting Docket 14 at 7). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

27 at 18-19. Only government actors whose personal conduct caused the deprivation of the plaintiff's federal right are liable under § 1983. *Pulaski Cnty. Republican Comm. v. Pulaski Cnty. Bd. of Election Comm'rs*, 956 F.2d 172, 174 (8th Cir. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Prisoners have a constitutional right to file grievances. *Gonzalez v. Bendt*, 971 F.3d 742, 744-45 (8th Cir. 2020) (quoting *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)). That constitutional right, however, is not compromised by the mere denial of grievances so long as the prisoner has "not allege[d] that he was prohibited from filing grievances altogether." *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). Thus, a claim based on the denial of grievances alone does not state a substantive constitutional claim. *Id.* (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam)).

The court agrees that if Holton's sole allegation against Munsch and Yantis was that their denials of Holton's grievances violated his constitutional rights, Holton would have failed to state a substantive constitutional claim. *See Lomholt*, 287 F.3d at 684. Here, however, Holton's allegations against Yantis and Munsch include allegations that both denied Holton's religious diet in violation of his equal protection rights. Docket 14 at 8. Also, the record indicates that Munsch ultimately approved Holton's removal from the

---

through the official's own individual actions, has violated the Constitution." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). A supervising officer can be liable "if his failure to train or supervise the offending actor" causes the constitutional deprivation. *Id.* Because Holton has failed to establish any facts beyond a conclusory allegation that Thom "failed to properly train or supervise his employees," the court holds that Thom is entitled to summary judgment on Holton's individual capacity claim. Docket 14 at 7.

kosher/common fare diet on March 22, 2022. Docket 28-8. Thus, the court finds that Holton has sufficiently alleged individual participation on the part of Munsch and Yantis that prevents the court from granting summary judgment on the grounds of lack of individual participation.

### B.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because their actions do not amount to a constitutional violation and because Holton has not demonstrated that the removal of a religious diet for violations of a prison's diet policy is a clearly established right. Docket 27 at 20-22.

"Qualified immunity is an immunity from suit, not a mere defense to liability." *De La Rosa v. White*, 852 F.3d 740, 743 (8th Cir. 2017). "Qualified immunity protects [government officials] from liability for civil damages so long as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." *Garcia v. City of New Hope*, 984 F.3d 655, 663 (8th Cir. 2021) (quoting *Perry v. Woodruff Cnty. Sheriff Dep't*, 858 F.3d 1141, 1144 (8th Cir. 2017)). The doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

To determine whether qualified immunity is appropriate, the court considers "(1) whether the facts shown by the plaintiff make out a

violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For a right to be clearly established, it does not require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *De La Rosa*, 852 F.3d at 745 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The court may address the elements in any order and if either of the elements are not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because the court has determined that defendants did not violate Holton's rights under RLUIPA or his constitutional rights to free exercise or equal protection by denying him the common fare/kosher diet, they are entitled to qualified immunity under the first prong on all three claims. Thus, defendants are entitled to summary judgment on Holton's RLUIPA, free exercise, and equal protection claims against defendants in their individual capacities.

Even if the court were to determine that Holton has alleged sufficient facts to establish that his constitutional rights have been violated, defendants would still be entitled to summary judgment. Here, Holton has failed to establish that removal of a religious diet as a consequence of violating the jail's policy is a clearly established right.

Defendants note that "[t]here is no Supreme Court or Eighth Circuit authority determining that removal from a religious diet for failure to comply with the diet's rules is unconstitutional." Docket 27 at 21. Defendants cite to *Brown-El v. Harris*, 26 F.3d 68 (8th Cir. 1994), where the Eighth Circuit held that removing a Muslim inmate from Ramadan accommodations for breaking fast in violation of the prison's policy was not a substantial burden on the inmate's religious practice. *Brown-El*, 26 F.3d at 69-70. Similarly, the Eighth Circuit held in *Patel* that denial of an inmate's request for specific religious meals did not violate his First Amendment rights where there were religiously complying alternatives. *See Patel*, 515 F.3d at 814-15. Thus, it was reasonable for defendants to conclude that removing Holton from the common fare/kosher diet for violating the jail's policy was not a violation of Holton's constitutional rights because he had access to alternative meal options that complied with his religious dietary restrictions. So, even if the defendants' actions violated the First and Fourteenth Amendments, the right was not clearly established at the time of the alleged misconduct. As a result, defendants are entitled to qualified immunity and to summary judgment on Holton's individual capacity claims. Because Holton is not successful on any of his claims, he is not entitled to an award of damages.[4]

---

[4] The court does not address the issue of the limitation of damages under the Prison Litigation Reform Act because Holton was not successful on the merits of his claims.

20

**CONCLUSION**

For the foregoing reasons, it is

ORDERED that defendants' motion for summary judgment (Docket 25) is

granted.

Dated September 25, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE